## Case No. 2,792.
### The CLARA M. PORTER.
[3 Ware, 39; [1] 18 Law Rep. 678.]

District Court, D. Massachusetts. Jan., 1856.

COLLISION—SAIL AND SAIL—WIND FREE AND CLOSE-HAULED.

1. When a vessel comes down with the wind free in an open sea, to speak another vessel which is close hauled on the starboard tack, the former has the entire duty of so manoeuvring as to avoid a collision, and it is the duty as well as the right of the latter, in case a collision is apprehended, to keep her course.

2. If a vessel with the wind free attempts, without necessity, to cross the bows of a vessel close-hauled, and a collision takes place, the former vessel will be held prima facie to be in fault.

In admiralty.

R. H. Dana, Jr., for libelants.
Bartlett and Thaxter, for claimants.

WARE, District Judge (holding the court for SPRAGUE, District Judge). The schooner Jenny Lind, a vessel of about eighty tons burthen, duly licensed for carrying on the codfishery, sailed from Southport, in Maine, on the 4th of April, fitted out for a fishing voyage on the Bank fisheries. On the 5th of May, near Sable island, while pursuing the objects of her voyage, and having on board two hundred and seventy quintals of fish, being then under sail, close hauled to the wind on her starboard tack, she saw a sail ahead at the distance of one-and-a-half or two miles, which proved to be the Clara M. Porter. The Jenny Lind was sailing on a north-westerly course, with a six knot breeze from the northeast, and the vessel seen was sailing nearly, if not precisely, in an opposite direction on her larboard tack. She was seen from the Jenny Lind over her weather-bow, and consequently the line on which she was sailing was to the windward. The vessels being under sail, on lines nearly, if not exactly, parallel, the Clara M. Porter would have passed to the windward. But soon after she was seen, she changed her course, put off before the wind, and came down with the intention of crossing the line of the Jenny Lind and speaking her at the leeward. From some miscalculation or mismanagement in one or the other vessel, or in both, instead of passing the Jenny Lind, as

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by George F. Emery, Esq.]

she intended, she came directly in collision with her, striking her amidships, head on, and damaged her so severely, that within half or three-quarters of an hour she sunk. Her crew saved themselves by escaping on board the Clara M. Porter. The Jenny Lind being close-hauled on her starboard tack, had, by the well-known law of the sea, the right of way. She had not only a right to hold on her course, but ordinarily, when a vessel, thus close-hauled on this tack, sees another sail approaching, with the wind free, and there is a possible danger of collision, it is her duty to hold her course, and it belongs to the vessel having the wind free to keep clear of her. In this case, the Clara M. Porter, having the entire command of her motions, and with ample sea room, if there had been danger of meeting, was bound to give way and avoid it. The collision would have been avoided if she had held her course, which would have carried her to the windward. If she wished to speak the Jenny Lind, she should have changed her course only so far as to have passed her within speaking distance at the windward, and then have crossed her track astern, if that was her object. The danger of collision would then have been avoided. Instead of this, she attempted the experiment of crossing her bows. It requires but little nautical experience to inform us that this is a hazardous manoeuvre, which ought not, in ordinary cases, to be attempted. If it is, without something like a necessity requiring it, and a collision is the consequence, the party making the attempt must be held prima facie in fault. In this case, with a fair and moderate breeze, and an open sea, no such necessity could exist.

It is admitted in the argument for the respondent, that the Jenny Lind had a right to hold her course, and it is argued that if she had done so, the Clara M. Porter would have crossed her line ahead safely and passed to her lee; but it is contended that the Jenny Lind, instead of holding on her course, first bore away before the wind and then luffed back into her first course, and that the collision is to be ascribed to this cause; that she was in fault, first, by deviating and bearing away, and again, after doing this, in luffing back. The argument proceeds on the ground that the Jenny Lind was bound to hold her course. This is the important and turning point in the case. If the Jenny Lind did what was imputed to her, it being her duty to hold her course, it is contended that the collision must be ascribed to her fault, and if the counsel is correct, even admitting that the Clara M. Porter was in fault in attempting the hazardous experiment of crossing the bows of the Jenny Lind, the collision must be considered as having been occasioned in part by faults on both sides. If so, then according to the recent decision of the supreme court in the case of The Catharine v. Dickinson, 17 How.

[58 U. S.] 170, the loss is to be equally divided between the two vessels. Such, also, is the rule of the English admiralty. The Monarch, 1 W. Rob. Adm. 26; Hay v. Le Neve, 2 Shaw, 395.

The evidence on this point is conflicting. The two principal witnesses for the libellants are Silas Orne, the master, and Baker Orne, his brother, and the mate, both part owners of the Jenny Lind and parties to the suit, and admissible as witnesses in such cases only from necessity. But both of them were on deck, Baker having the helm, and both in situations in which they must have known whether their vessel was put off before the wind or not; and they both swear positively and directly that she was not; that she had, for a considerable time before the Porter was in sight, been on that course, and that it was at no time changed. The captain states that he several times hailed the Porter, and this is confirmed by Captain Woodbury, to put her wheel down and luff, but though she seemed to change her wheel back and forth, no change was made in her course. Most of the crew of the Jenny Lind, just before the collision, were below at dinner, and on hearing the captain hail they hurried on deck. Their statements on this point are, consequently, not so clear nor so much to be relied on, but as far as they go, they fully confirm the testimony of the master and mate. On the other hand, Captain Woodbury, of the Clara M. Porter, says, that when he was coming down before the wind, at twice hailing distance, the Jenny Lind appeared to put off, and fearing a collision, he put his wheel down; that he heard the hail from the Jenny Lind to put his wheel down, but that it was then hard down, and that the Jenny Lind, after bearing away, appeared to him to come to. Stewart, an experienced seaman on the Porter, says, that he saw the Jenny Lind on the wind, and that if she had kept her course, the Porter would have passed ahead of her, or she would have come into us; but that she kept off, and then he feared a collision. Foster, who was at the helm of the Clara M. Porter, says, that after they approached the Jenny Lind, coming down before the wind, she put off more free; that he intended to cross her bows, and come under her lee. These witnesses confirm the testimony of Captain Woodbury, that the Jenny Lind, as they approached her, put off more before the wind, but none of them say, that after she put off she again luffed back into the wind. Now, if the Jenny Lind put off more before the wind, and the Clara M. Porter was also before the wind, the latter vessel, if she came in collision, must have struck the Jenny Lind obliquely. But she, in fact, struck her head on, perpendicularly. The only way by which the manner of the collision can be explained, if the Jenny Lind went off before the wind, is, by supposing that she came back again as stated by Cap-

tain Woodbury. But there is, it appears to me, an intrinsic improbability in this supposition. If it was done by the Jenny Lind shortly before the meeting, as it was, if at all, it would only make the collision more dangerous, by converting an oblique into a perpendicular collision. Besides, if I have the testimony of the witnesses correctly, no one of them confirms Captain Woodbury in this particular.

The testimony of the two Ornes is fairly open to the observations made upon it, as coming from deeply interested witnesses. But similar remarks will apply with about the same force to Captain Woodbury, who feels as strong an interest in justifying himself to his owners; and will also apply with diminished force to all testimony on one side and the other. The crews of each vessel probably had a natural inclination to find their own vessel clear of blame.

There then remains the testimony of the witnesses from the Tamerlane. At the time of the collision, and for some time before, the Tamerlane was from half a mile to a mile astern of the Jenny Lind, the latter being a point or a point and a half on her starboard bow, and sailing on the same course. Her crew were all, or nearly all, on deck, and the depositions of three of them have been taken by the libellants. They state that they were on deck observing the two vessels in plain sight, with a full opportunity of noticing their movements. They were so situated, sailing nearly on the same line with the Jenny Lind and almost directly astern, that if she had changed her cou.se it could clearly be seen from their vessel. They all concur in saying that there was no change in her course, and fully confirm the testimony of her crew. The Tamerlane was from the same port with the Jenny Lind; the masters and crews of the two vessels neighbors and acquaintances; and the counsel for the respondents has, with some reason, argued, that in a controversy between the owners of the Jenny Lind and strangers, their sympathies would naturally be with their townsmen and friends. Some deduction, it is supposed, ought to be made from their testimony on this account. I do not mean to deny that this circumstance might be entitled to some consideration, if their testimony consisted of minute facts, each of minor importance in itself, and deriving their importance from the combined effects of the whole, and from the coloring given to the facts. But their testimony is to a single fact, and one, which from their situation, they could observe and know, if not with absolute certainty, at least with a pretty near approximation to it. To this fact their testimony is direct and precise. We are, then, reduced to the necessity of supposing that it is, if not certainly true, at least probably so, or of imputing wilful prevarication to the witnesses. An attempt is made by the claimants to discredit the two principal witnesses for the Jenny Lind, her master and mate, by showing that they have, at different times, made declarations and admissions inconsistent with their testimony given in court. But this evidence does not appear to me materially to impair their credit, sustained as their testimony is by other witnesses.

My opinion, on the whole proof of the case, is, that the collision was occasioned by the fault of the Clara M. Porter, and the decree must be against her. The case will go to a commissioner to ascertain the amount of the damage.